UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD FORREST, JR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
                                  /

Case No. 1:16-cv-633

HON. JANET T. NEFF

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.44, 114.) He has completed high school and was previously employed as a welder. (PageID.213–214.) Plaintiff applied for benefits on May 3, 2013, alleging disability beginning March 1, 2012, due to social phobia, spinal stenosis, severe depression, arthritis, and a hernia. (PageID.114–115, 198–204.) Plaintiff's application was denied on September 10, 2013, after which time he requested a hearing before an ALJ. (PageID.132–135, 142–143.) On September

24, 2014, Plaintiff appeared with his counsel before ALJ Paul W. Jones for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.60–105.) In a written decision dated October 20, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.44–59.) On March 29, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.38–41.) This action followed.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Jones determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.49.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) spinal degenerative disc disease; (2) dysfunction of the major joint, left knee; (3) affective disorder; (4) anxiety; and (5) substance abuse (ethanol and marijuana). (PageID.49.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.49–51.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b), except he can only stand/walk for about two hours and sit for six hours in an eight-hour workday, with normal breaks; requires a sit/stand option, at will, provided he is not off task more than 10% of the work period; occasionally climb, balance, stoop, kneel, crouch and crawl; in simple, routine, and repetitive tasks; with occasional changes in the work setting; and occasional interaction with the public, coworkers and supervision.

(PageID.51.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (PageID.54.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as an assembler (200,000 national jobs), inspector (75,000 national jobs), and packer (150,000 national jobs). (PageID.87–89.) Based on this record, the ALJ found that Plaintiff

4

was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.55.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from March 1, 2012, the alleged disability onset date, through October 20, 2014, the date of decision. (PageID.55–56.)

## DISCUSSION

### 1. The ALJ's Evaluation of Ms. Nicole Degraff's Opinion.

In support of his application for benefits, Plaintiff submitted a statement from Ms. Nicole Degraff, a certified physician assistant. Ms. Degraff stated that Plaintiff had been:

> under our care for severe lumbar radiculopathy, bilateral knee instability, and severe depression with a history of alcohol abuse in remission. It is unsafe to himself or others for him to engage in work of any kind. He needs to have the testing and see the proper specialists in order to better treat his medical and psychiatric conditions however he is unable to afford this. His work restrictions are indefinite.

(PageID.315.). After summarizing the note's contents, the ALJ gave the following consideration to Ms. Degraff's opinion.

> I give little weight to the assessment of Ms. Degraff. The Social Security rules and regulations do not recognize statements made by a licensed or clinical physician assistant for the purposes of rendering medical diagnoses or opinions, and the statements are considered non-acceptable medical source statements. Assuming, *arguendo*, I were to consider or recognize Ms. Degraff's letter, her assessment is inconsistent with her own clinical findings during claimant's several office visits; the office visit reports generally showed a stable and maintain[ed] condition with no complications or issues (Exhibit 6F and 9F). Ms Degraff apparently relied quite heavily on the subjective report of symptoms and limitations provided by claimant, and seemed to accept uncritically as true most, if not all, of what claimant reported. Furthermore, the opinion expressed is conclusory, providing very little explanation or the evidence relied on in forming

5

> that opinion or even any specific restrictions or limitations that would prevent claimant from performing work related activities.

(PageID.53.) Plaintiff claims that the ALJ's analysis of Ms. Degraff's opinion was deficient. The Court disagrees.

Plaintiff refers to Ms. Degraff as a treating physician assistant. There is no treating physician assistant rule, however, and to the extent Plaintiff claims Ms. Degraff's opinions should be subject to the treating physician rule, he cannot succeed. This is so because as a physician assistant, Ms. Degraff is not an acceptable medical source. *See* 20 C.F.R. 404.1513(a), (d)(1); *see also Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014); *Jones v. Colvin*, No. 7–14–cv–36, 2014 WL 4716517, at *4 (E.D. Ky. Sept. 22, 2014) ("The Social Security regulations make clear that physician's assistants are not 'acceptable medical sources,' but rather 'other sources[.]'").[2] Because Ms. Degraff was not an acceptable medical source, the ALJ was not required to provide "good reasons" for the weight given to her opinion under 20 C.F.R. § 404.1527(c)(2). *See, e.g.*, *Hughes v. Comm'r of Soc. Sec.*, No. 1:11–cv–66, 2015 WL 4076931, at *8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14–cv–213, 2015 WL 350617, at *6 (S.D. Ohio Jan. 26, 2015) (collecting cases); *Borden v. Comm'r of Soc. Sec.*, 1:13–cv–2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec. 19, 2014) ("Other source" opinions are "neither entitled to controlling weight, nor subject to the 'good reasons' requirement of the treating physician rule.").

Nevertheless, SSR 06–03p instructs that the Commissioner should evaluate the opinions expressed by other medical sources, such as Ms. Degraff:

---

[2] Recently, the agency's regulations were amended in order to, among others things, state that the agency will now consider physician assistants as acceptable medical sources for claims brought on or after March 27, 2017. *See* 20 C.F.R. § 404.1502(a). The application in this case was filed well before March 27, 2017, and as such Ms. Degraff does not qualify as an acceptable source. *See id.*

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). At bottom, SSR 06–03p requires only that information from other sources be "considered." *Id.* This is not a demanding standard, and it was easily met here.

The claim Plaintiff raises is not exactly clear. It appears to involve weighing the opinion of Ms. Degraff with the opinion of a consulting examiner, Dr. Scott Lazzara. (PageID.380.) The gist of Plaintiff's argument is that the ALJ needed to give more weight to Ms. Degraff's opinion because she had treated Plaintiff for a long period of time whereas Dr. Lazzara had only examined Plaintiff once. "It is the Commissioner's function to resolve conflicts in the medical evidence." *Craft v. Comm'r of Soc. Sec.*, 39 F. App'x 274, 276 (6th Cir. 2002). Plaintiff is correct that an examining relationship and length of treatment are factors an ALJ is to consider when weighing medical opinions. *See* 20 C.F.R. § 404.1527(c). However, the fact that a medical opinion is from an 'acceptable medical source,' which applies to Dr. Lazzara and does not apply to Ms. Degraff, is a factor that may justify giving Dr. Lazzara's opinion greater weight. SSR 06–03p at *5. Consistency is another important factor: "Generally, the more consistent an opinion is with the

record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(c)(4). The ALJ noted Ms. Degraff's opinions were not well supported and furthermore were inconsistent with her own treatment notes. Only in his reply does Plaintiff argue that substantial evidence fails to support the ALJ's discussion. (PageID.406–408.) While Plaintiff has cherry-picked records he claims support his position, he ignores those records that support the ALJ's. For example, on August 2, 2013, it was noted that his pain was at a level of 7-8, but his activities of daily living, including physical, social, and work, were normal. (PageID.307.) While his lumbar spine had a decreased range of motion, the spine itself was normal. Plaintiff's lumbar spine also had normal stability, muscle strength, and tone. (PageID.310.) Plaintiff again had normal activities of daily living on July 23, 2014 and September 17, 2014. (PageID.312, 326.) Plaintiff also reported he was able to control his emotions and pain (PageID.313.)

In sum, as a non-acceptable source, the ALJ was not required to provide "good reasons" when he decided not to adopt Ms. Degraff's opinions. Nonetheless, the ALJ articulated several considerations for declining to do so. This discussion easily passes muster under SSR 06–03p, and Plaintiff has not demonstrated otherwise. Furthermore, the ALJ did not violate agency regulations in giving greater weight to Dr. Lazarra's opinion despite the fact that Ms. Degraff had a longer examination history with Plaintiff. This claim of error should be denied.

**2.     Plaintiff's RFC is Supported By Substantial Evidence.**

Plaintiff's second claim of error is unclear. Plaintiff claims that the ALJ's decision fails "to make sense of the record through even-handed rational balancing of the relevant medical record and physician opinions." (PageID.381.) But there are no citations to the administrative record, and there is only a single reference to legal authority. That authority, *DeLong v. Comm'r*

*of Soc. Sec.*, No. 1:10-CV-1056, 2013 WL 1309003, at *8 (W.D. Mich. Mar. 28, 2013), reverses the decision of the Commissioner for violating the treating physician rule; however, there is no treating physician opinion in this case. The Court is able to glean references to the opinion of Dr. Scott Lazzara, the consulting examiner, as well as unspecified opinions from emergency room physicians. Plaintiff also references statements made by the vocational expert at the administrative hearing. It appears Plaintiff claims the ALJ erred by failing to properly balance these opinions. For reasons stated below, the Court disagrees.

Because Dr. Lazzara was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539–40 (6th Cir. 2014). The opinions of a consultative examiner are not entitled to any particular weight. *Peterson*, 552 F. App'x at 539; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). As noted above, while the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The ALJ stated his RFC assessment accommodated Plaintiff's limitations as found by Dr. Lazzara. This assertion is supported by substantial evidence. Dr. Lazarra's report indicated that Plaintiff was able to sit, stand, bend, and stoop. (PageID.305.) While Plaintiff had a wide-based

9

and lurching gait, Plaintiff was able to walk on his heels and toes. (PageID.306.) It is true, as Plaintiff alludes, that Dr. Lazzara indicated Plaintiff would require a brace for the left knee and an ankle-foot orthosis for the left foot. (PageID.306). But "Plaintiff has not shown that the restrictions . . . were more restrictive than the ALJ's RFC finding, which limited him to light jobs allowing him to sit or stand at will." *Opperman v. Comm'r of Soc. Sec.*, No. 2:14-CV-13145, 2015 WL 4756670, at *11 (E.D. Mich. July 16, 2015), *report and recommendation adopted*, No. 14-CV-13145, 2015 WL 4756682 (E.D. Mich. Aug. 11, 2015) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) for the proposition that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") In other words, Plaintiff has not demonstrated that this restriction was greater than the ALJ's RFC finding.

Next, Plaintiff mentions opinions from emergency room physicians. The record demonstrates that Plaintiff was treated on several occasions at the emergency room. But Plaintiff fails to cite, either in this claim of error or in his factual summary, to any opinion from one of those physicians that the ALJ allegedly failed to discuss. The ALJ did reference Plaintiff's ER visits. (PageID. 52.) To the extent Plaintiff would have had the ALJ discuss these records in greater detail, it is plain that an ALJ is not required to discuss every piece of evidence, and his failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006). Accordingly, the Court discerns no error regarding the emergency room treatment records.

Finally, Plaintiff claims the ALJ erred in relying on the VE testimony. A VE's testimony in response to an accurate hypothetical may provide substantial evidence at step five that

10

the claimant is able to perform a significant number of jobs. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Here, Plaintiff claims the ALJ did not provide an accurate hypothetical because it did not contain terms that were recognized in the DOT. (PageID.382.) The relevant testimony appears as follows:

> ALJ: I would like you to assume a person of the claimant's age, education, and work experience who is able to do limited light work and by that I further define as lifting up to 20 pounds occasionally, lifting and carrying up to 10 pounds frequently. But standing and walking for aobut two hours and sitting for up to six hours in an eight hour work day with normal breaks. And then also, all occasional posturals. Specifically climbing, balancing, stooping, kneeling, crouching, and crawling. And mental limitations as follows. Simple routine repetitive tasks, occasional changes in the work setting and occasional public coworker and supervision interaction and no other limitations. Could such a person perform any of the past work that we have generally discussed?
>
> A. Can I clarify? You said stand and walk for six, sit for two?
>
> Q. Stand and walk for two, six for six.
>
> A. Okay, alright.
>
> Q. Limited light.
>
> A. Okay. That's what I wanted to clarify.
>
> Q. Otherwise it would be just light.
>
> A. Okay. Yeah, I – for the record that the stand and walking, that's not in the DOT. Basically what can give you is sit stand options. They can sit the entire day, stand the entire day, or go back and forth between the two. So no past work.
>
> Q. Okay. So what you are telling me involves a sit stand option.
>
> A. Yes.
>
> Q. And no – and you are staying such a person could not perform any of the past work?

11

> A. Not past work.
>
> Q. Because as we discussed, it's all at –
>
> A. Medium.
>
> Q. – at least light or better. What? Medium. Okay. Houw about other jobs in the national economy?
>
> A. Yes. These would be light unskilled with an SVP of 2 unless I indicated otherwise and the numbers will be reduced because of the sit /stand option.

(PageID.89.) The VE proceeded to provide the jobs of assembler, inspector, and packer, with 425,000 total jobs existing in the national economy. (PageID.89.) An ALJ is not required to rely on the DOT. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Here, the VE stated that in order to provide a response to the hypothetical, a specification for a sit/stand option needed to be included. This specification was adopted in the RFC. (PageID.51.) While it is true that the ALJ also included a limitation that Plaintiff would be expected to stand or walk for two hours and sit for six hours, Plaintiff has not demonstrated how this fact renders the VE's testimony unreliable, nor that he is incapable of performing this activity. Accordingly, the Court finds no error here.

### 3. The ALJ's Evaluation of Dr. Shahida Mohiuddin's Opinion.

On August 8, 2013, Dr. Mohiuddin, an agency consultant, provided her opinion regarding Plaintiff's physical abilities. Among other things, she indicated that Plaintiff was capable of occasionally lifting and carrying twenty pound weights and frequently lifting and carrying ten pound weights. Plaintiff could stand and/or walk for four hours of a workday and sit for about six hours in the workday. (PageID.122.) At the conclusion of the opinion, the doctor provided an explanation for her opinion by making brief references to various records. (PageID.123.) She

concluded this explanation by stating that "IF A DENIAL WILL CHECK IF CLAIMANT HAS SEEN ANY ORTHO SURGEON FOR POSSIBLE =S TO 1.04C MORE SEVERE FINDINGS NOTED AT IM CE W/ LIMPING GAIT, LLE WEAKNESS = 4/5, & L FOOT DROP, BUT NOT NOTED BY PCP. (PageID.123.) After this explanation, Dr. Mohiuddin included an electronic signature. (PageID.123.) Plaintiff claims the ALJ erred by characterizing this opinion as one from Dr. Mohiuddin, rather than one from a single decision maker (SDM). He further alleges error because the ALJ failed to order an expert opinion regarding whether Plaintiff met or equaled a listing. (PageID.382.) The Court discerns no error here.

"Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Plaintiff, however, disputes that the above described opinion is actually from Dr. Mohiuddin. Rather, Plaintiff appears to claim that the opinion is from a SDM. Plaintiff points out that neither Ms. Degraff nor Dr. Lazzara had indicated Plaintiff would be able to stand or walk for four hours. (PageID.382.) Based on this fact, Plaintiff asserts that this limitation must have been given by a SDM. (PageID.382.) This is an unreasonable assertion that enjoys no support in the record. Instead, the more reasonable reading of the record is that Dr. Mohiuddin reviewed the available medical evidence and arrived at an independent opinion of Plaintiff's functional abilities. This, the doctor was certainly qualified to do.

Finally, Plaintiff claims that the ALJ erred by "failing to heed the explicit call by Dr. Mohiuddin to acquire a proper orthopedic opinion to properly assess listing 1.04(a) before issuing a denial." (PageID.382.) There was no explicit call. At most, Plaintiff can point to the suggestion contained in Dr. Mohiuddin's RFC explanation to check, if Plaintiff's application was denied, whether there had been further developments in the record that would support a step three finding. But there was no call here that an ALJ obtain expert testimony. Even assuming the doctor had issued such a directive, Plaintiff points to no authority demonstrating that the ALJ was required to heed this call, or that it would be reversible error to fail to do so. Indeed, the regulations at 20 C.F.R. § 404.1527(e) plainly do not require that an ALJ consult with a medical expert before making his finding that a claimant did not meet or equal the requirements of a listed impairment. *See Garza v. Comm'r of Soc. Sec.*, No. 1:14-CV-1150, 2015 WL 8922011, at *8 (W.D. Mich. Nov. 25, 2015) (collecting cases), *report and recommendation adopted*, No. 1:14-CV-1150, 2015 WL 8958469 (W.D. Mich. Dec. 15, 2015).

Accordingly, this claim of error should be denied.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated: May 10, 2017     /s/ Janet T. Neff
              JANET T. NEFF
              UNITED STATES DISTRICT JUDGE